

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON GRAND JURY 2024
NOVEMBER 19, 2024 SESSION

UNITED STATES OF AMERICA

v.                    CRIMINAL NO. 2:24-cr-00192

                      18 U.S.C. § 1349
                      18 U.S.C. § 1344 & 2

KISHA SUTTON
SHAMIESE WRIGHT
CYLENA SUTTON
RAHMEL MEEKINS
WILLIAM POWELL
DAMISHA BROWN
JASMINE SPENCER

# I N D I C T M E N T

The Grand Jury Charges:

At all times material to this Indictment:

## Introduction

1.   Beginning no later than in or about April 2021, and continuing until at least in or about July 2021, at or near Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia and elsewhere, defendants KISHA SUTTON, SHAMIESE WRIGHT, CYLENA SUTTON, RAHMEL MEEKINS, WILLIAM POWELL, DAMISHA BROWN, and JASMINE SPENCER, and Lydia Spencer, named but

not indicted, conspired with each other and persons both known and unknown to the Grand Jury, to commit bank fraud, in violation of 18 U.S.C. § 1344 by applying for and obtaining fraudulent Paycheck Protection Program ("PPP") loans from financial institutions. The scheme caused at least $140,625 in fraudulent PPP loans to be issued to ineligible borrowers and for the funds to be used on ineligible expenses.

2. Defendant KISHA SUTTON caused the preparation and submission of fraudulent PPP loan applications and IRS Forms 1040 Schedule C ("Schedule C") on behalf of her co-conspirators in exchange for up to 25 percent of the total funded amount. The Schedules C qualified the borrowers for a loan amount they were not eligible to receive by either reporting income for nonexistent businesses or inflating the income of existing businesses.

### The Paycheck Protection Program

3. On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security Act ("The CARES Act"), an economic stimulus bill that, among other things, provided emergency assistance to small business owners, including agricultural businesses, and nonprofit organizations in all U.S. states, Washington D.C., and territories affected by the COVID-19 pandemic. One source of relief provided by the CARES Act was the

authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). Additional PPP funding was authorized in legislation enacted on or about December 27, 2020, and March 11, 2021.

4.    As discussed more fully below, the PPP, which was operated by the Small Business Administration ("SBA"), provided small businesses with funding to meet specific business obligations, including payroll and rent. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage payments, accounts payable, and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA. In the event of default, the SBA would fully satisfy the lender for any balance remaining on the loan. Further, the SBA would forgive any loan up to 100 percent if the borrower utilized 60 percent of the loan on payroll costs in the 24-week period post-disbursement, with the remaining 40 percent going toward covered expenses including: mortgage interest payments, rent payments, utilities, operations expenditures, property damage costs, supplier costs, and worker

protection expenditures. Whatever portion was not forgiven was serviced as a loan.

5.    The SBA promulgated regulations concerning eligibility for a PPP loan. Individuals who operated a business under a "sole proprietorship" business structure were eligible for a PPP loan. To qualify for a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship, as typically reported to the Internal Revenue Service on a Schedule C for a given tax year. As with other PPP loans, this information and supporting documentation was used to calculate the amount of money the individual was entitled to receive under the PPP. The maximum loan amount for a sole proprietor with no employees was $20,833.

6.    A PPP loan application was processed by the third-party participating lender with whom the application was filed. If a PPP loan application was approved, the participating lender would fund the PPP loan. To encourage PPP loans to be issued, the loan was guaranteed by the SBA. Data from the application, including information from the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA while processing the loan.

4

7.   The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, and to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

### The Co-Conspirators and the Financial Institutions

8.   Defendant KISHA SUTTON was a resident of Jersey City, Hudson County, New Jersey. Defendant KISHA SUTTON caused the creation and submission of fraudulent PPP applications for her co-conspirators, and she received kickbacks from her co-conspirators for her assistance.

9.   Defendant SHAMIESE WRIGHT was a resident of Charleston, Kanawha County, West Virginia. Defendant SHAMIESE WRIGHT recruited at least one other co-conspirator, Lydia Spencer, not named as a defendant herein, to join the conspiracy. Defendant SHAMIESE WRIGHT authorized defendant KISHA SUTTON to apply for a fraudulent PPP loan on her behalf. As a result, defendant SHAMIESE WRIGHT received fraudulent PPP loan proceeds and paid a portion of the proceeds to defendant KISHA SUTTON as a kickback for applying for the loan.

10.   Defendant CYLENA SUTTON was a resident of Charleston, Kanawha County, West Virginia.  Defendant CYLENA SUTTON authorized defendant KISHA SUTTON to apply for two fraudulent PPP loans on her behalf. As a result, defendant CYLENA SUTTON received fraudulent PPP loan proceeds and paid a portion of the proceeds to defendant KISHA SUTTON as a kickback for applying for the loans.

11.   Defendant RAHMEL MEEKINS was a resident of South Charleston, Kanawha County, West Virginia. Defendant RAHMEL MEEKINS authorized defendant KISHA SUTTON to apply for a fraudulent PPP loan on his behalf. As a result, defendant RAHMEL MEEKINS received fraudulent PPP loan proceeds and paid a portion of the proceeds to defendant KISHA SUTTON as a kickback for applying for the loan.

12.   Defendant WILLIAM POWELL was a resident of Huntington, Cabell County, West Virginia. Defendant WILLIAM POWELL authorized defendant KISHA SUTTON to apply for a fraudulent PPP loan on his behalf. As a result, defendant WILLIAM POWELL received fraudulent PPP loan proceeds and paid a portion of the proceeds to defendant KISHA SUTTON as a kickback for applying for the loan.

13.   Defendant DAMISHA BROWN was a resident of Charleston, Kanawha County, West Virginia. Defendant DAMISHA BROWN authorized defendant KISHA SUTTON to apply for a fraudulent PPP loan on her

behalf. As a result, defendant DAMISHA BROWN received fraudulent PPP loan proceeds and paid a portion of the proceeds to defendant KISHA SUTTON as a kickback for applying for the loan.

14.  Defendant JASMINE SPENCER was a resident of Charleston, Kanawha County, West Virginia. Defendant JASMINE SPENCER authorized defendant KISHA SUTTON to apply for a fraudulent PPP loan on her behalf. As a result, defendant JASMINE SPENCER received fraudulent PPP loan proceeds and paid a portion of the proceeds to defendant KISHA SUTTON as a kickback for applying for the loan.

15.  Lydia Spencer, named but not indicted, was a resident of Charleston, Kanawha County, West Virginia. Lydia Spencer authorized defendant KISHA SUTTON to apply for a fraudulent PPP loan on her behalf, received fraudulent PPP loan proceeds, and paid a portion of the proceeds to defendant KISHA SUTTON as a kickback.

16.  Financial Institution 1 was a non-bank financial institution as defined by 18 U.S.C. § 20 headquartered in Laguna Hills, California. Financial Institution 1 participated in the SBA's PPP as a lender, and as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

17.  Financial Institution 2 was a non-bank financial institution as defined by 18 U.S.C. § 20 headquartered in Lake

7

Mary, Florida. Financial Institution 2 participated in the SBA's PPP as a lender, and as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

18. Financial Institution 3 was a non-bank financial institution as defined by 18 U.S.C. § 20 headquartered in Coral Gables, Florida. Financial Institution 3 participated in the SBA's PPP as a lender, and as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

## COUNT ONE

### The Conspiracy

19.    The allegations set forth in paragraphs 1 through 18 are hereby realleged and incorporated herein.

20.    Beginning no later than in or about April 2021, and continuing until at least in or about July 2021, at or near Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendants KISHA SUTTON, SHAMIESE WRIGHT, CYLENA SUTTON, RAHMEL MEEKINS, WILLIAM POWELL, DAMISHA BROWN, and JASMINE SPENCER, and Lydia Spencer, named but not indicted, knowingly and intentionally conspired with each other and with other persons both known and unknown to the Grand Jury, to commit bank fraud in violation of 18 U.S.C. § 1344, that is, to knowingly execute a scheme and artifice to defraud Financial Institutions 1, 2, and 3, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of Financial Institutions 1, 2, and 3 by means of false and fraudulent pretenses, representations, and promises made in PPP loan applications and Schedules C.

21.    In furtherance of the conspiracy, the defendants committed the following acts:

**Manner and Means**

22. Defendant KISHA SUTTON caused the creation and submission of PPP loan applications on behalf of defendants SHAMIESE WRIGHT, CYLENA SUTTON, RAHMEL MEEKINS, WILLIAM POWELL, DAMISHA BROWN, and JASMINE SPENCER, and Lydia Spencer, named but not indicted, (hereinafter "the co-conspirators") and with the authorization of each of the co-conspirators in exchange for payment from the fraudulent PPP loan proceeds.

23. In the applications, defendant KISHA SUTTON falsely stated either the existence of a sole proprietorship prior to the pandemic that generated $75,000 in gross income or greatly inflated the revenues of any "businesses" that did exist in 2020.

24. Defendant KISHA SUTTON also caused the creation of fictitious Schedules C to support each of the fraudulent PPP loan applications that would be submitted to Financial Institutions 1, 2, and 3 on behalf of the co-conspirators. These Schedule Cs falsely stated that defendant KISHA SUTTON's co-conspirators had operated sole proprietorships in 2020 that had $75,000 in gross receipts or sales.

25. Financial Institutions 1, 2, and 3 received the applications and Schedules C and funded the PPP loans.

10

26.  Once the PPP loans were funded, the co-conspirators paid defendant KISHA SUTTON up to 25 percent of the total funded amount of the PPP loans for her assistance. The co-conspirators kept the remainder of the funds and spent the money on ineligible expenses.

27.  On or about the dates listed below, defendant KISHA SUTTON caused the submission of the following false PPP loan applications on behalf of her co-conspirators, which were ultimately funded by Financial Institutions 1, 2, and 3:

|    | DATE (on or about) | CO-CONSPIRATOR / BORROWER | FINANCIAL INSTITUTION | FUNDED AMOUNT |
|----|------|------|------|------|
| a. | 4/19/2021 | SHAMIESE WRIGHT | 3 | $15,625 |
| b. | 4/11/2021 | CYLENA SUTTON | 1 | $15,625 |
| c. | 4/14/2021 | CYLENA SUTTON | 1 | $15,625 |
| d. | 4/11/2021 | RAHMEL MEEKINS | 1 | $15,625 |
| e. | 4/22/2021 | WILLIAM POWELL | 3 | $15,625 |
| f. | 4/25/2021 | DAMISHA BROWN | 1 | $15,625 |
| g. | 5/27/2021 | JASMINE SPENCER | 1 | $15,625 |
| h. | 4/8/2021 | Lydia Spencer | 1 | $15,625 |
| i. | 4/8/2021 | Lydia Spencer | 2 | $15,625 |

28.  On or about the dates listed below, the co-conspirators paid defendant KISHA SUTTON for her services.

|    | DATES (on or about) | CO-CONSPIRATOR | TOTAL AMOUNT |
|----|------|------|------|
| a. | 5/7/2021 – 5/21/2021 | SHAMIESE WRIGHT | $3,000 |
| b. | 4/20/2021 – 5/4/2021 | CYLENA SUTTON | $2,500 |
| c. | 4/23/2021 – 4/30/2021 | RAHMEL MEEKINS | $1,650 |
| d. | 7/6/2021 – 7/20/2021 | WILLIAM POWELL | $2,000 |
| e. | 4/30/2021 – 5/27/2021 | DAMISHA BROWN | $3,500 |
| f. | 6/30/2021 – 7/9/2021 | JASMINE SPENCER | $3,000 |
| g. | 5/3/2021 – 6/21/2021 | Lydia Spencer | $4,000 |

11

In violation of Title 18, United States Code, Sections 1344 and 1349.

**COUNT TWO**

29.    The allegations set forth in paragraphs 1 through 28 are hereby realleged and incorporated herein.

30.    Between no later than on or about April 19, 2021, and continuing until at least on or about May 21, 2021, defendants KISHA SUTTON and SHAMIESE WRIGHT, aided and abetted by each other, knowingly executed and attempted to execute the above-mentioned scheme.

31.    On or about April 19, 2021, defendant KISHA SUTTON caused the submission of a PPP loan application and a Schedule C to Financial Institution 3 on behalf of defendant SHAMIESE WRIGHT and with defendant SHAMIESE WRIGHT's authorization.

32.    The application and the Schedule C stated that defendant SHAMIESE WRIGHT was a sole proprietor of a business that was established on January 1, 2017. The application stated that in 2020, the business had a gross income of $75,000. As part of the application, a 2020 Schedule C was submitted listing gross receipts of $75,000 and a net profit of $48,750.

33.    In fact, defendant SHAMIESE WRIGHT did not have a business in 2020 with those gross receipts and profit. Defendant SHAMIESE WRIGHT's 2020 tax return listed $21,716 in wages and no business income or expenses. Defendant SHAMIESE WRIGHT applied for

13

unemployment compensation throughout 2020 and stated, several times, that she was not self-employed.

34. Financial Institution 3 funded defendant SHAMIESE WRIGHT's PPP loan for $15,625 on or about May 7, 2021.

35. Between on or about May 7, 2021, and on or about May 21, 2021, Defendant SHAMIESE WRIGHT, within the Southern District of West Virginia, remitted $3,000 of the fraudulent PPP loan proceeds to defendant KISHA SUTTON. Defendant SHAMIESE WRIGHT spent the remainder of the PPP loan proceeds on personal, ineligible expenses.

In violation of Title 18, United States Code, Sections 1344 and 2.

**COUNT THREE**

36. The allegations set forth in paragraphs 1 through 28 are hereby realleged and incorporated herein.

37. Between no later than on or about April 11, 2021, and continuing until at least on or about May 2, 2021, defendants KISHA SUTTON and CYLENA SUTTON, aided and abetted by each other, knowingly executed and attempted to execute the above-mentioned scheme.

38. On or about April 11, 2021, defendant KISHA SUTTON caused the submission of a PPP loan application and an IRS Form Schedule C to Financial Institution 1 on behalf of defendant CYLENA SUTTON and with defendant CYLENA SUTTON's authorization.

39. The application and the Schedule C stated that defendant CYLENA SUTTON was a sole proprietor of a business that was established on January 1, 2017. The application stated that in 2020, the business had a gross income of $75,000. As part of the application, a 2020 Schedule C was submitted listing gross receipts of $75,000 and a net profit of $48,750.

40. In fact, defendant CYLENA SUTTON did not have a business in 2020 with those gross receipts and profit. Defendant CYLENA SUTTON's 2020 tax return listed $6,791 in wages and no business income or expenses. Defendant CYLENA SUTTON applied for

unemployment compensation throughout 2020 and stated, several times, that she was not self-employed.

41.    Financial Institution 1 funded defendant CYLENA SUTTON's PPP loan for $15,625 on or about April 20, 2021.

42.    Between on or about April 20, 2021, and on or about April 27, 2021, defendant CYLENA SUTTON, within the Southern District of West Virginia, remitted $2,000 of the fraudulent PPP loan proceeds to defendant KISHA SUTTON. Defendant CYLENA SUTTON spent the remainder of the PPP loan proceeds on personal, ineligible expenses.

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT FOUR

43.  The allegations set forth in paragraphs 1 through 28 and 36 through 42 are hereby realleged and incorporated herein.

44.  Between no later than on or about April 14, 2021, and continuing until at least on or about May 4, 2021, defendants KISHA SUTTON and CYLENA SUTTON, aided and abetted by each other, knowingly executed and attempted to execute the above-mentioned scheme.

45.  On or about April 14, 2021, defendant KISHA SUTTON caused the submission of a second PPP loan application and a second Schedule C to Financial Institution 1 on behalf of defendant CYLENA SUTTON and with defendant CYLENA SUTTON's authorization.

46.  The second application mirrored the first. It and the Schedule C stated that defendant CYLENA SUTTON was a sole proprietor of a business that was established on January 1, 2017. The application stated that in 2020, the business had a gross income of $75,000. As part of the application, a 2020 Schedule C was submitted listing gross receipts of $75,000 and a net profit of $48,750.

47.  As previously stated, in fact, defendant CYLENA SUTTON did not have a business in 2020 with those gross receipts and profit. Defendant CYLENA SUTTON's 2020 tax return listed $6,791 in

17

wages and no business income or expenses. Defendant CYLENA SUTTON applied for unemployment compensation throughout 2020 and stated, several times, that she was not self-employed.

48.   Financial Institution 1 funded defendant CYLENA SUTTON's second PPP loan for $15,625 on or about May 2, 2021.

49.   On or about May 4, 2021, defendant CYLENA SUTTON, within the Southern District of West Virginia, remitted $500 of the fraudulent PPP loan proceeds to defendant KISHA SUTTON. Defendant CYLENA SUTTON spent the remainder of the PPP loan proceeds on personal, ineligible expenses.

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT FIVE

50.  The allegations set forth in paragraphs 1 through 28 are hereby realleged and incorporated herein.

51.  Between no later than on or about April 11, 2021, and continuing until at least on or about April 30, 2021, defendants KISHA SUTTON and RAHMEL MEEKINS, aided and abetted by each other, knowingly executed and attempted to execute the above-mentioned scheme.

52.  On or about April 11, 2021, defendant KISHA SUTTON caused the submission of a PPP loan application and a Schedule C to Financial Institution 1 on behalf of defendant RAHMEL MEEKINS and with defendant RAHMEL MEEKINS's authorization.

53.  The application and the Schedule C stated that defendant RAHMEL MEEKINS was a sole proprietor of a business that was established on January 1, 2017. The application stated that in 2020, the business had a gross income of $75,000. As part of the application, a 2020 Schedule C was submitted listing gross receipts of $75,000 and a net profit of $48,750.

54.  In fact, defendant RAHMEL MEEKINS did not have a business in 2020 with those gross receipts and profit. Defendant RAHMEL MEEKINS's 2020 tax return listed $8,754 in wages and no business income or expenses. Defendant RAHMEL MEEKINS applied for

unemployment compensation throughout 2020 and stated, several times, that he was not self-employed.

55. Financial Institution 1 funded defendant RAHMEL MEEKINS's PPP loan for $15,625 on or about April 23, 2021.

56. Between on or about April 23, 2021, and on or about April 30, 2021, defendant RAHMEL MEEKINS, within the Southern District of West Virginia,  remitted $1,650 of the fraudulent PPP loan proceeds to defendant KISHA SUTTON. Defendant RAHMEL MEEKINS spent the remainder of the PPP loan proceeds on personal, ineligible expenses.

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT SIX

57.   The allegations set forth in paragraphs 1 through 28 are hereby realleged and incorporated herein.

58.   Between no later than on or about April 19, 2021, and continuing until at least on or about July 20, 2021, defendants KISHA SUTTON and WILLIAM POWELL, aided and abetted by each other, knowingly executed and attempted to execute the above-mentioned scheme.

59.   On or about April 19, 2021, defendant KISHA SUTTON caused the submission of a PPP loan application and an IRS Form Schedule C to Financial Institution 3 on behalf of defendant WILLIAM POWELL and with defendant WILLIAM POWELL's authorization.

60.   The application and the Schedule C stated that defendant WILLIAM POWELL was a sole proprietor of a business that was established on January 1, 2017. The application stated that in 2020, the business had a gross income of $75,000. As part of the application, a 2020 Schedule C was submitted listing gross receipts of $75,000 and a net profit of $48,750.

61.   In fact, defendant WILLIAM POWELL did not have a business in 2020 with those gross receipts and profit. Defendant WILLIAM POWELL applied for unemployment compensation throughout 2020 and stated, several times, that he was not self-employed.

21

62.    Financial   Institution   3   funded   defendant   WILLIAM POWELL's PPP loan for $15,625 on or about June 29, 2021.

63.    Between on or about July 6, 2021, and on or about July 20, 2021, defendant WILLIAM POWELL, within the Southern District of West Virginia, remitted $2,000 of the fraudulent PPP loan proceeds to defendant KISHA SUTTON. Defendant WILLIAM POWELL spent the remainder of the PPP loan proceeds on personal, ineligible expenses.

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT SEVEN

64.    The allegations set forth in paragraphs 1 through 28 are hereby realleged and incorporated herein.

65.    Between no later than on or about April 25, 2021, and continuing until at least on or about May 27, 2021, defendants KISHA SUTTON and DAMISHA BROWN, aided and abetted by each other, knowingly executed and attempted to execute the above-mentioned scheme.

66.    On or about April 25, 2021, defendant KISHA SUTTON caused the submission of a PPP loan application and a Schedule C to Financial Institution 1 on behalf of defendant DAMISHA BROWN and with defendant DAMISHA BROWN's authorization.

67.    The application and the Schedule C stated that defendant DAMISHA BROWN was a sole proprietor of a business that was established on January 1, 2017. The application stated that in 2020, the business had a gross income of $75,000. As part of the application, a 2020 Schedule C was submitted listing gross receipts of $75,000 and a net profit of $48,750.

68.    In fact, defendant DAMISHA BROWN did not have a business in 2020 with those gross receipts and profit. Defendant DAMISHA BROWN's 2020 tax return listed $668 in wages and no business income or expenses. Defendant DAMISHA BROWN applied for unemployment

23

compensation throughout 2020 and stated, several times, that she was not self-employed.

69.    Financial Institution 1 funded defendant DAMISHA BROWN's PPP loan for $15,625 on or about April 30, 2021.

70.    Between on or about April 30, 2021, and on or about May 27, 2021, defendant DAMISHA BROWN, within the Southern District of West Virginia, remitted $3,500 of the fraudulent PPP loan proceeds to defendant KISHA SUTTON. Defendant DAMISHA BROWN spent the remainder of the PPP loan proceeds on personal, ineligible expenses.

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT EIGHT

71.  The allegations set forth in paragraphs 1 through 28 are hereby realleged and incorporated herein.

72.  Between no later than on or about May 27, 2021, and continuing until at least on or about July 9, 2021, defendants KISHA SUTTON and JASMINE SPENCER, aided and abetted by each other, knowingly executed and attempted to execute the above-mentioned scheme.

73.  On or about May 27, 2021, defendant KISHA SUTTON caused the submission of a PPP loan application and a Schedule C to Financial Institution 1 on behalf of defendant JASMINE SPENCER and with defendant JASMINE SPENCER's authorization.

74.  The application and the Schedule C stated that defendant JASMINE SPENCER was a sole proprietor of a business that was established on January 1, 2017. The application stated that in 2020, the business had a gross income of $75,000. As part of the application, a 2020 Schedule C was submitted listing gross receipts of $75,000 and a net profit of $48,750.

75.  In fact, defendant JASMINE SPENCER did not have a business in 2020 with those gross receipts and profit. Defendant JASMINE SPENCER applied for unemployment compensation throughout 2020 and stated, several times, that she was not self-employed.

25

76.   Financial   Institution   1   funded   defendant   JASMINE SPENCER's PPP loan for $15,625 on or about June 28, 2021.

77.   Between on or about June 30, 2021, and on or about July 9, 2021, defendant JASMINE SPENCER, within the Southern District of West Virginia,   remitted $3,000 of the fraudulent PPP loan proceeds to defendant KISHA SUTTON. Defendant JASMINE SPENCER spent the remainder of the PPP loan proceeds on personal, ineligible expenses.

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT NINE

78. The allegations set forth in paragraphs 1 through 28 are hereby realleged and incorporated herein.

79. Between no later than on or about April 8, 2021, and continuing until at least on or about June 21, 2021, defendants KISHA SUTTON and SHAMIESE WRIGHT and Lydia Spencer, named but not indicted, aided and abetted by each other, knowingly executed and attempted to execute the above-mentioned scheme.

80. No later than on or about April 8, 2021, defendant SHAMIESE WRIGHT recruited Lydia Spencer to participate in the scheme. At or around the same time, Lydia Spencer provided her personal and banking information to defendant SHAMIESE WRIGHT for use in fraudulent PPP applications.

81. On or about April 8, 2021, KISHA SUTTON caused the submission of a PPP loan application and a Schedule C to Financial Institution 2 on behalf of Lydia Spencer and with Lydia Spencer's authorization.

82. The application and the Schedule C stated that Lydia Spencer was a sole proprietor of a business, "Les Prints," that was established on January 1, 2016. The application stated that in 2020, the business had a gross income of $75,000. As part of the

27

application, a 2020 Schedule C was submitted listing gross receipts of $75,000 and a net profit of $48,750.

83.  In fact, Les Prints did not have those gross receipts and profit in 2020. Additionally, Lydia Spencer never submitted the fraudulent Schedule C to the IRS.

84.  Financial Institution 2 funded Lydia Spencer's PPP loan for $15,625 on or about April 30, 2021.

85.  Between on or about May 3, 2021, and on or about May 17, 2021, Lydia Spencer, within the Southern District of West Virginia, remitted $3,000 of the fraudulent PPP loan proceeds to defendant KISHA SUTTON. Lydia Spencer spent the remainder of the PPP loan proceeds on personal, ineligible expenses.

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT TEN

86. The allegations set forth in paragraphs 1 through 28 and 78 through 85 are hereby realleged and incorporated herein.

87. Between no later than on or about April 8, 2021, and continuing until at least on or about June 21, 2021, defendant KISHA SUTTON and Lydia Spencer, named but not indicted, aided and abetted by each other, knowingly executed and attempted to execute the above-mentioned scheme.

88. On or about April 8, 2021, KISHA SUTTON caused the submission of a PPP loan application and a Schedule C to Financial Institution 1 on behalf of Lydia Spencer and with Lydia Spencer's authorization.

89. The application and the Schedule C stated that Lydia Spencer was a sole proprietor of a business, "Les Prints," that was established on January 1, 2016. The application stated that in 2020, the business had a gross income of $75,000. As part of the application, a 2020 Schedule C was submitted listing gross receipts of $75,000 and a net profit of $48,750.

90. In fact, Les Prints did not have those gross receipts and profit in 2020. Additionally, Lydia Spencer never submitted the fraudulent Schedule C to the IRS.

29

91.    Financial Institution 1 funded Lydia Spencer's PPP loan for $15,625 on or about June 21, 2021.

92.    On or about June 21, 2021, Lydia Spencer, within the Southern District of West Virginia, remitted $1,000 of the fraudulent PPP loan proceeds to defendant KISHA SUTTON. Lydia Spencer spent the remainder of the PPP loan proceeds on personal, ineligible expenses.

In violation of Title 18, United States Code, Sections 1344 and 2.

## FORFEITURE

1.  The allegations contained in Counts 1 through 10 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2), and 28 U.S.C. 2461(c).

2.  Pursuant to 18 U.S.C. §§ 981 (a)(1)(C), 982(a)(2), 28 U.S.C. § 2461(c) and Rule 32.2 of the Federal Rules of Criminal Procedure, upon conviction of the offenses in violation of 18 U.S.C.  § 1349, as set forth in Count 1 of this Indictment, or violation of 18 U.S.C. §§ 1344 and 2, as set forth in Counts 2 through 10 of this Indictment, any defendant so convicted shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation(s).

4. The property to be forfeited includes, but is not limited to:

      a. a money judgment in at least the amount of $19,650, such amount constituting the proceeds of violations set forth in this Indictment regarding KISHA SUTTON;

      b. a money judgment in at least the amount of $12,625, such amount constituting the proceeds of violations set forth in this Indictment regarding SHAMIESE WRIGHT;

31

c. a money judgment in at least the amount of $28,750, such amount constituting the proceeds of violations set forth in this Indictment regarding CYLENA SUTTON;

d. a money judgment in at least the amount of $13,975, such amount constituting the proceeds of violations set forth in this Indictment regarding RAHMEL MEEKINS;

e. a money judgment in at least the amount of $13,975, such amount constituting the proceeds of violations set forth in this Indictment regarding WILLIAM POWELL;

f. a money judgment in at least the amount of $12,125, such amount constituting the proceeds of violations set forth in this Indictment regarding DAMISHA BROWN; and

g. a money judgment in at least the amount of $12,625, such amount constituting the proceeds of violations set forth in this Indictment regarding JASMINE SPENCER.

5.    If any of the property described above, as a result of any act or omission of the defendant:

   a.    cannot be located upon the exercise of due diligence;

   b.    has been transferred or sold to, or deposited with, a third party;

   c.    has been placed beyond the jurisdiction of the court;

   d.    has been substantially diminished in value; or

     e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

All pursuant to Title 18, United States Code, Sections 981 (a)(1)(C), 982(a)(2) and Title 28, United States Code, Section 2461(c).

WILLIAM S. THOMPSON
United States Attorney

By: _Holly J. Wilson_____

Holly J. Wilson
Assistant United States Attorney

33

AO 442 (Rev 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of West Virginia

**SEALED**

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| SHAMIESE WRIGHT | )    Case No.   2:24-cr-00192-02 |
| | ) |
| | ) |
| | ) |
| | ) |
| *Defendant* | |

## ARREST WARRANT

To:    Any authorized law enforcement officer

     **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*      SHAMIESE WRIGHT     ,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint
☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:
   Bank Fraud/ aid and abet.

Date:    11/19/2024                *Issuing officer's signature*

City and state:    CHARLESTON, WV             RORY L. PERRY II, CLERK
                                           *Printed name and title*

| Return |
|---|
|      This warrant was received on *(date)*                , and the person was arrested on *(date)* at *(city and state)*                     . |
| Date:                                                *Arresting officer's signature* |
|                                                *Printed name and title* |